**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

JONATHAN SPEGAL, Individually and For Others Similarly Situated,

    Plaintiff,

v.

ASPEN GROUP LTD.,

    Defendant.

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

    1.    Jonathan Spegal (Spegal or Plaintiff) brings this lawsuit to recover unpaid overtime wages and other damages from Aspen Group Ltd. (Aspen Group) under the Fair Labor Standards Act (FLSA), the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq*. (CMWA) as implemented by the Colorado Overtime and Minimum Pay Standards Order (COMPS), and the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq*. (CWCA) (CMWA, COMPS, and CWCA are together referred to as Colorado Wage Law).

    2.    Spegal worked for Aspen Group as an Hourly Construction Worker.

    3.    Like the Putative Class Members (as defined below), Spegal regularly worked more than 40 hours in a workweek.

    4.    But Aspen Group does not pay its Hourly Construction Workers, including Spegal and the Putative Class Members, for all hours they work.

5. Instead, Aspen Group requires its Hourly Construction Workers, including Spegal and the Putative Class Members, to perform compensable work "off the clock" before and after their scheduled shifts.

6. Specifically, before clocking in for their shifts, Aspen Group requires its Hourly Construction Workers, including Spegal and the Putative Class Members, to arrive at their designated Aspen Group facility; obtain their daily assignments; prepare the necessary construction tools, equipment, and materials; load the same onto Aspen Group's company vehicle; and travel to their assigned jobsites.

7. Likewise, after clocking out for their shifts, Aspen Group requires its Hourly Construction Workers, including Spegal and the Putative Class Members, to load construction tools, equipment, and materials back onto Aspen Group's company vehicle and unload and clean these necessary tools and equipment.

8. But Aspen Group does not pay Spegal and the Putative Class Members for this compensable pre- and post-shift "off the clock" work.

9. Rather, Aspen Group only pays its Hourly Construction Workers, including Spegal and the Putative Class Members, for their hours worked physically at their assigned jobsite (Aspen Group's "jobsite pay scheme").

10. Aspen Group's uniform jobsite pay scheme violates the Fair Labor Standards Act (FLSA) and Colorado Wage Law by depriving Spegal and the Putative Class Members of overtime wages for all overtime hours worked.

11. Spegal brings this class and collective action on behalf of himself and other Hourly Construction Workers to recover unpaid overtime and other damages.

**JURISDICTION AND VENUE**

12. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

13. This Court has general personal jurisdiction over Aspen Group because Aspen Group maintains its headquarters and principal place of business in Centennial, Colorado and, therefore, resides in the State of Colorado.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Aspen Group is headquartered in Centennial, Colorado, which is in this District. 28 U.S.C. § 1391(b)(1).

**PARTIES**

15. Spegal was an hourly employee of Aspen Group.

16. Aspen Group employed Spegal as a Lead Tech.

17. Spegal worked for Aspen Group throughout Colorado from approximately August 2023 until March 2024.

18. Throughout his employment, Aspen Group required Spegal to work "off the clock" before and after his scheduled shifts.

19. But Aspen Group did not pay Spegal for the time he spent performing compensable work "off the clock" before and after his shifts, including the time he spent loading the company vehicle, traveling to the jobsite, and removing debris from the company vehicle after the conclusion of construction work.

20. Rather, throughout his employment, Aspen Group subjected Spegal to its jobsite pay scheme and only paid him for the hours he worked physically at his assigned jobsite.

21. Spegal's written consent is attached as **Exhibit 1**.

22. Spegal brings this action on behalf of himself and all other similarly situated Hourly Construction Workers who were subject to Aspen Group's jobsite pay scheme.

23. Aspen Group uniformly requires its Hourly Construction Workers to perform compensable work "off the clock" before and after their shifts, including obtaining failed to pay them overtime for all hours that they worked under 40 and in excess of 40 hours in a workweek in accordance with the FLSA and Colorado Wage Law.

24. But Aspen Group failed to pay its Hourly Construction Workers for this compensable worktime.

25. Instead, Aspen Group only pays its Hourly Construction Workers for their hours worked physically at their assigned jobsites.

26. Thus, Aspen Group uniformly deprives its Hourly Construction Workers of overtime wages for all overtime hours worked in violation of the FLSA and Colorado Wage Law.

27. Spegal brings this action on behalf of himself and all other similarly situated Hourly Construction Workers who were paid under Aspen Group's illegal salary with no overtime pay scheme.

28. The putative collective is properly defined as:

> **All Hourly Construction Workers employed by Aspen Group who were subject to Aspen Group's jobsite pay scheme at any time during the past 3 years (the "FLSA Construction Workers").**

29. Spegal seeks certification of a class under Fed. R. Civ. P. 23 to remedy Aspen Group's violations of the CMWA and CWCA.

30. The putative class is properly defined as:

4

> **All Hourly Construction Workers employed by Aspen Group who were subject to Aspen Group's jobsite pay scheme at any time during the past 6 years in Colorado (the "Colorado Construction Workers").**

31. Collectively, the FLSA Construction Workers and Colorado Construction Workers are referred to as the "Putative Class Members."

32. The Putative Class Members are easily ascertainable from Aspen Group's business and personnel records.

33. Aspen Group maintains its headquarters in Englewood, Colorado.

34. Aspen Group may be served through its registered agent: **CT Corporation System, 7700 E. Arapahoe Rd., Ste. 220, Centennial, Colorado 80112**.

## COVERAGE UNDER THE FLSA

35. At all relevant times, Aspen Group was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

36. At all relevant times, Aspen Group was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

37. At all relevant times, Aspen Group was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

38. At all relevant times, Aspen Group had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, including but not limited to, mobile devices, laptops, GPS trackers, construction tools, and other goods or materials that have moved in, or were produced for, commerce.

39. Aspen Group's annual gross volume of sales made or business done have far exceeded the minimum ($500,000.00) required for coverage under the FLSA during each of the last 3 years.

40. At all relevant times, the Putative Class Members were Aspen Group's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

41. At all relevant times, the Putative Class Members were engaged in commerce or in the production of goods for commerce.

42. Aspen Group uniformly requires its Hourly Construction Workers, including Spegal and the Putative Class Members, to perform compensable work "off the clock" before and after their shifts, including obtaining daily job assignments, preparing the necessary construction tools and equipment, loading Aspen Group's company trucks, and traveling between Aspen Group's facility and jobsites.

43. But Aspen Group fails to pay Spegal and the Putative Class Members for this compensable work time, including overtime wages, in violation of the FLSA.

44. Instead, Aspen Group only pays Spegal and the Putative Class Members for their hours worked physically at their assigned jobsites.

45. Aspen Group's uniform jobsite pay scheme deprives Spegal and the Putative Class Members of overtime compensation for all hours worked after 40 in a workweek.

46. Thus, Aspen Group's uniform jobsite pay scheme violates the FLSA. 29 U.S.C. § 207(a) & (e).

**FACTUAL ALLEGATIONS**

47. Aspen Group provides multifamily and commercial construction renovation services throughout Colorado.[1]

48. To provide these services to its clients, Aspen Group employs Hourly Construction Workers, including the Putative Class Members, throughout Colorado.

49. Spegal worked for Aspen Group throughout Colorado.

50. Spegal was an hourly employee of Aspen Group.

51. Spegal earned around $30 per hour while working for Aspen Group.

52. Spegal worked as a Lead Tech.

53. Spegal worked for Aspen Group from approximately August 2023 until March 2024.

54. Spegal regularly worked over 40 hours per week.

55. Spegal would regularly work 45 to 70 hours per week.

56. Spegal would drive the company vehicle to and from the jobsite, and facilitate construction renovation work on the jobsite.

57. Spegal would load equipment onto the company vehicle and discard garbage after the conclusion of the construction renovation work.

58. Spegal and the Putative Class Members were not employed in any bona fide executive, administrative, or professional capacity.

59. Despite possessing different job titles, including Helper and Lead Tech, each of the Putative Class Members performed similar construction renovation job duties.

---

[1] *See* https://aspengroupco.com/about-us/ (last accessed May 31, 2024).

60. Spegal and the Putative Class Members' job duties made them non-exempt from the FLSA and Colorado Wage Law's overtime requirements.

61. The Putative Class Members performed similar construction renovation services.

62. The Putative Class Members' job duties made them non-exempt from the FLSA and Colorado Wage Law's overtime requirements.

63. The pay practice which Spegal and the Putative Class Members were subjected to made them non-exempt under the FLSA and Colorado Wage Law's overtime requirements.

64. While Aspen paid Spegal at a time and a half rate for hours worked over 40 in a workweek, it failed to compensate Spegal for all hours he worked.

65. Aspen Group required Spegal and the Putative Class Members to clock in and out only when on a job site, even though he spent considerable time performing essential job duties away from the job site or "off the clock."

66. For example, Aspen would not pay Spegal for discarding garbage after the conclusion of construction renovation work on the jobsite.

67. Aspen Group would not pay Spegal and the Putative Class Members for their time traveling to and from job sites even though they loaded equipment prior to departure, made phone calls *en route*, and unloaded equipment after the conclusion of the construction renovation work at the physical jobsite.

68. Aspen Group would not pay Spegal and the Putative Class Members in the morning and evening when they would load and unload their company vehicles.

69. Thus, rather than receiving time and a half as required by the FLSA and Colorado Wage Law, Spegal and Putative Class Members did not receive any compensation for hours worked off the clock, including those over 40 in a workweek.

70. The failure to compensate Spegal and Putative Class Members, who were non-exempt, overtime compensation violates the FLSA and Colorado Wage Law.

71. As an employer Aspen is required to know about the FLSA and Colorado Wage Law, and their overtime requirements.

72. Aspen Group did not review GPS data to determine if its Hourly Construction Workers were required to work off the clock.

73. Aspen Group did perform any time studies or audits to determine if its Hourly Construction Workers were required to work off the clock.

74. Aspen Group nonetheless failed to pay Spegal and the Putative Class Members overtime.

75. Aspen's failure to pay for all time, including overtime, to Spegal and Putative Class Members was a willful violation of the FLSA and Colorado Wage Law.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

76. Spegal incorporates all other paragraphs by reference.

77. Spegal brings his claims as a class and collective action on behalf of himself and the Putative Class Members.

78. The Putative Class Members are uniformly victimized by Aspen Group's jobsite pay scheme, which is in willful violation of the FLSA and Colorado Wage Law.

79. Other Putative Class Members worked with Spegal and indicated they were paid in the same manner, performed similar work, and were subject to Aspen Group's same jobsite pay scheme.

80. Based on his experience with Aspen Group, Spegal is aware Aspen Group's illegal practices were imposed on the Putative Class Members.

81. The Putative Class Members are similarly situated in all relevant respects.

82. Even if the specific job titles or precise job locations of the various Putative Class Members may vary, these differences do not matter for the purposes of determining their entitlement to overtime.

83. Rather, Aspen Group's uniform jobsite pay scheme renders Spegal and the other Putative Class Members similarly situated for the purposes of determining their right to overtime pay.

84. The back wages owed to Spegal and the other Putative Class Members will be calculated using the same records and using the same formula.

85. Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Aspen Group's records, and there is no detraction from the common nucleus of liability facts.

86. Therefore, the issue of damages does not preclude class or collective treatment.

87. Spegal's experiences are therefore typical of the experiences of the Putative Class Members.

88. Spegal has no interest contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

89. Like each Putative Class Member, Spegal has an interest in obtaining the unpaid wages owed under federal and/or state law.

90. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

91. Absent this class and collective action, many Putative Class Members will not obtain redress for their injuries, and Aspen Group will reap the unjust benefits of violating the FLSA and Colorado Wage Law.

92. Further, even if some of the Putative Class Members could afford individual litigation, it would be unduly burdensome to the judicial system.

93. Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

94. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

95. Among the common questions of law and fact are:

   a. Whether Aspen Group's jobsite pay scheme was uniformly applied to all its Hourly Construction Workers throughout Colorado;

   b. Whether Aspen Group's jobsite pay scheme deprived Spegal and the Putative Class Members of wages, including overtime wages, for compensable work time in violation of the FLSA;

   c. Whether Aspen Group failed to pay Spegal and the Putative Class Members overtime wages for all hours worked after 40 in a workweek, including hours worked away from their assigned jobsites, in violation of the FLSA and Colorado Wage Law;

11

      d. Whether Aspen Group knew, or had reason to know, Spegal and the Putative Class Members were requested, suffered, permitted, or allowed to work "off the clock" in violation of the FLSA;

      e. Whether Aspen Group's decision to pay Spegal and the Putative Class Members under its jobsite pay scheme was made in good faith; and

      f. Whether Aspen Group's violation of the FLSA was willful.

96. Spegal knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

97. As part of its regular business practices, Aspen Group intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and Colorado Wage Law with respect to Spegal and the Putative Class Members.

98. Aspen Group's illegal pay policy deprived Spegal and the Putative Class Members of the premium overtime wages they are owed under state and/or federal law.

99. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

100. Notice of this lawsuit should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

101. Those similarly situated workers are known to Aspen Group, are readily identifiable, and can be located through Aspen Group's business records.

## CAUSES OF ACTION
### FLSA VIOLATIONS

102. Spegal incorporates by reference all allegations in preceding paragraphs.

103. Spegal brings his FLSA claim as a collective action on behalf of himself and the FLSA Construction Workers.

104. Aspen Group violated, and is violating, the FLSA by employing non-exempt employees (Spegal and the FLSA Construction Workers) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours they worked after 40 in a workweek.

105. Aspen Group's unlawful conduct harmed Spegal and the FLSA Construction Workers by depriving them of the overtime wages they are owed.

106. Accordingly, Spegal and the FLSA Construction Workers are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rate of pay, plus an equal amount as liquidated damages, as well as attorneys' fees and costs.

### CMWA VIOLATIONS

107. Spegal incorporates by reference all allegations in preceding paragraphs.

108. Spegal brings his Colorado Wage Law claim as a class action on behalf of himself and the Colorado Construction Workers.

109. The conduct alleged violates the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq.* (CMWA) as implemented by the Colorado Overtime and Minimum Pay Standards Order (COMPS).

110. At all relevant times, Aspen Group was an "employer" within the meaning of the COMPS Order. 7 C.C.R. 1103-1 ¶ 1.6.

111. Spegal and the Colorado Construction Workers were Aspen Group's "employees" as that term is defined by the COMPS Order. 7 C.C.R. 1103-1 ¶ 1.5(A).

112. Aspen Group violated the COMPS Order when it failed to pay Spegal and the Colorado Construction Workers overtime premiums for all hours worked over forty in each given workweek and for hours worked over twelve each workday. 7 C.C.R. 1103-1¶ 4.1.1(A).

113. Specifically, Aspen Group's jobsite pay plan violated the COMPS Order when it failed to pay Spegal and the Colorado Construction Workers overtime premiums for all hours worked over forty in each given workweek and for hours worked over twelve each workday.

114. Aspen Group violated the COMPS Order when it did not provide Spegal and the Colorado Construction Workers with 30 minute uninterrupted and duty-free meal period when Spegal and the Colorado Construction Workers' shift exceeded five consecutive hours worked. 7 C.C.R. 1103-1 ¶¶ 5.1.

115. Aspen Group violated the COMPS Order when it failed to authorize and permit Spegal and the Colorado Construction Workers to take compensated ten-minute rest periods for each four hours worked. 7 C.C.R. 1103-1 ¶¶ 5.2.3, 5.2.4.

116. Spegal and the Colorado Construction Workers are entitled to recover in this civil action the unpaid balance of the full amount of overtime wages they are owed, together with reasonable attorney's fees and court costs. 7 C.C.R. 1103-1 ¶ 8.1(A).

**CWCA Violations**

117. Spegal incorporates by reference all allegations in preceding paragraphs.

118. Aspen Group was Spegal and the Colorado Construction Workers' "employers" as that term is defined by the CWCA because they employed Spegal and the Colorado Construction Workers in Colorado. C.R.S. § 8-4-101(6).

119. Spegal and the Colorado Construction Workers were Aspen Group's "employees" as that term is defined by the CWCA because they performed labor for the benefit of Aspen Group. C.R.S. § 8-4-101(5).

120. Aspen Group violated the CWCA when it failed to pay Spegal and the Colorado Construction Workers all earned, vested and determinable wages upon termination of employment. C.R.S. § 8-4-109.

121. As a result, Spegal and the Colorado Construction Workers suffered lost wages and lost use of those wages in an amount to be determined at trial.

122. Spegal and the Colorado Construction Workers are entitled to recover in a civil action all earned and vested wages owed to them, statutory penalties and attorney fees and costs of suit. C.R.S. § 8-4-109; C.R.S. § 8-4-110.

**Jury Demand**

123. Spegal demands a trial by jury.

**Relief Sought**

WHEREFORE, Spegal, individually and on behalf of the Putative Class Members, respectfully request that this Court grant the following relief:

a. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the FLSA Construction Workers to permit them to join this action by filing a written notice of consent;

b. An order certifying a Rule 23 class action on behalf of the Colorado Construction Workers;

c. An Order appointing Spegal and his counsel to represent the interests of the FLSA Construction Workers;

d. An Order appointing Spegal and his counsel to represent the interests of the Colorado Construction Workers;

e. An Order finding Aspen Group liable to Spegal and the FLSA Construction Workers for unpaid overtime owed under the FLSA, plus liquidated damages in an amount equal to their unpaid compensation;

f. A judgment against Aspen Group awarding Spegal and the Colorado Construction Workers all their unpaid overtime compensation, statutory penalties, and any other penalties available under the Colorado Wage Law;

g. An order awarding attorney's fees, costs, and expenses;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Carl A. Fitz*
    **Carl A. Fitz**
    Cal. State Bar No. 350576
    Tex. State Bar No. 24105863
    **FITZ LAW PLLC**
    3730 Kirby Drive, Suite 1200
    Houston, Texas 77098
    (713) 766-4000
    carl@fitz.legal

    **ATTORNEY FOR PLAINTIFF &**
    **THE PUTATIVE CLASS MEMBERS**